UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| DWYER INSTRUMENTS, INC., ) | |
| Plaintiff, ) | |
| v. ) | CASE NO. 3:09-cv-00010-TLS-CAN |
| ) | |
| SENSOCON, INC. and ) | |
| TONY E. KOHL, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF SENSOCON, INC.
AND TONY E. KOHL'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.      Introduction**

On its face, this case appears to be about intellectual property. The root of the dispute, however, is about competition. Dwyer Instruments, Inc. ("Dwyer") initiated this lawsuit in January, 2009 for one purpose: to force Sensocon, Inc. ("Sensocon") out of business. As set forth below, Dwyer's claims are without merit and Sensocon and Tony E. Kohl ("Tony") are entitled to summary judgment as a matter of law.

**II.     Statement of Material Facts**

      **A.      Sensocon Is A Separate Legal Entity From Tony**

On August 10, 2005, the Articles of Incorporation for Sensocon were filed. (Dep. of T. Kohl, pp. 30-31, Exh. 13). Sensocon is a Florida corporation with its office in Florida. (*Id.*). Sensocon is in the business of selling gauges that measure differences in air pressure. (Affidavit of Tony E. Kohl, ¶ 2). The dispute centers around products sold by Sensocon, commonly known as model Series S2000 differential pressure gauges. (First Amended Complaint, Exh. A; see Docket #52). The gauges are used by original equipment manufacturers or end users for the purpose of measuring the differential pressure of air and compatible gases in a number of different applications. (Aff. of

T. Kohl, ¶ 2; Dep. of T. Kohl, p. 46). For example, the gauges can be used to measure the pressure difference across a filter to determine when the filter should be changed. (Aff. of T. Kohl, ¶ 2). A photograph of the model S2000 gauge that Sensocon sold from 2006 through 2009 is designated as Exhibit 41 to the Deposition of Sensocon. (First Amended Complaint., Exh. A; Dep. of Sensocon, pp. 78-79, Exh. 41). Sensocon has never sold the model S2000 gauge with the lens pictured in Exhibit C to the First Amended Complaint. (Aff. of T. Kohl ¶ 3). Subsequently, Sensocon changed the design on the lens of the model S2000 gauge and a photograph of the model S2000 gauge that Sensocon began selling in January, 2010 is designated as Exhibit 49 of the Deposition of Sensocon. (Dep. of Sensocon, pp. 78-79, Exh. 49).

Following the incorporation of Sensocon through 2010, Tony has been the sole shareholder and the sole employee of Sensocon.[1] (Dep. of Sensocon, pp. 10-11). As the sole shareholder and sole employee of Sensocon, Tony has acted on behalf of Sensocon. (Dep. of Sensocon, pp. 7-8). While acting on behalf of Sensocon, Tony has maintained separate addresses, bank accounts and computers for himself and Sensocon. (First Amended Complaint, ¶ 4-5; Aff. of T. Kohl, ¶ 4; Dep. of T. Kohl, p. 38; Dep. of Sensocon, p. 15). Moreover, Sensocon is capitalized, has corporate records and observes corporate formalities. (Aff. of T. Kohl, ¶ 4). Further, Sensocon has not paid for Tony's personal obligations. (*Id.*). Nor has Tony engaged in any conduct to manipulate the corporate form or to promote fraud, injustice or illegal activities. (*Id.*).

---

[1] Sensocon hired an employee in January, 2011, but Tony remains the sole shareholder. (Aff. of T. Kohl, ¶ 12). Prior to forming Sensocon, Tony worked for Dwyer. (Dep. of T. Kohl, p. 7).

Dwyer named Sensocon and Tony as co-defendants in this lawsuit, alleging Tony is the *alter ego* of Sensocon. (First Amended Complaint, ¶¶ 8, 40, 53, 64, 72, 81, 87, 93, 105, 121). Missing, however, are any factual allegations and/or evidence to support how Tony misused the corporate form or how misuse of the corporate form promoted an injustice. (First Amended Complaint).

### B. Notice Of The MAGNEHELIC Mark, DWYER Mark And Purported "Series 2000" Common Law Mark

On January 8, 2007, Dwyer's counsel mailed a letter to Sensocon (the "Letter"). (Dep. of E. Budny, pp. 154-155, Exh. 9). The Letter notified Sensocon of the following:

1. Dwyer's trademark registered with the United States Patent Trademark Office ("PTO") for the word "MAGNEHELIC" ("MAGNEHELIC Mark");

2. Dwyer's trademark registered with the PTO for the word "DWYER" ("DWYER Mark");

3. Dwyer's purported common law trademark in the model number "Series 2000;"

4. alleged infringements of the MAGNEHELIC Mark, DWYER Mark, and Series 2000 common law mark in Sensocon's flyer entitled "Why should we buy and sell Sensocon products?" (the "Flyer") (First Amended Complaint, Exh. F);

5. Dwyer's purported trademark rights in the trade dress of Dwyer's MAGNEHELIC brand pressure gauge; and

6. alleged violation of Dwyer's trademark rights through the use of trade dress substantially identical to the trade dress of Dwyer's MAGNEHELIC brand pressure gauge. (Dep. of E. Budny, pp. 154-155, Exh. 9).

Sensocon's Flyer, which was attached to the Letter, was on Sensocon letterhead and provided, in pertinent part, as follows:

### Why should we buy and sell Sensocon Products?

- **Series S2000**
    - The S2000 is a direct replacement to the Dwyer Series 2000 (Magnehelic)
    - The Sensocon Preferred Distributor Discount results in better prices as low quantities and has the benefit of "mix and match". An order for (1) S2000 will be $2.50* net less than the Dwyer net price. An order for (25) S2000 with any range combination will be $44.85 net compared to the probable net price from Dwyer of $50.80* since mix and match is not allowed – this is a savings of $5.95* per unit.
    - Part numbers are easy to cross reference, the model 2003 from Dwyer is a model S2003 from Sensocon.
- **Series A1000**
    - The A1000 is a digital differential pressure gauge that is designed to fit into the same size hole as the S2000 for customers that are looking for a better product. (Dep. of E. Budny, Exh. 9; First Amended Complaint, Exh. F).

In the Letter, Dwyer also threatened, "if we are forced to proceed with litigation we will also need to inquire about certain instances of theft of trade secrets which we are investigating." (Dep. of E. Budny, Exh. 9). The Letter did not refer to Dwyer's U.S. trademark application filed on November 8, 2006 to register the lens design of the MAGNEHELIC brand as a trademark. (Dep. of E. Budny, Exh. 9; First Amended Complaint, Exh. D). After receiving the Letter, Sensocon never distributed the Flyer. (Aff. of T. Kohl, ¶ 7).

   C.   **Registration Of The Lens Mark**

On October 30, 2006, Sensocon sold the first gauge with the lens reflected in Exhibit A of the First Amended Complaint. (Aff. of T. Kohl, ¶ 5). On November 8, 2006, Dwyer filed its trademark registration application to register the lens of the MAGNEHELIC brand gauge as a trademark ("Lens Mark"). (First Amended Complaint, Exh. D). On March 18, 2008, the Lens Mark was registered. (*Id.*).

### D. Sensocon's Notice Of The Lens Mark

Sensocon first received actual notice of the registration of the Lens Mark when it was served with a copy of the Complaint on January 14, 2009. (Return of Service; *see* Docket #6). After Sensocon received the Complaint, Sensocon continued to sell gauges with the lens reflected in Exhibit A to the First Amended Complaint only through December 31, 2009. (Dep. of Sensocon, pp. 78-79).

### E. Sensocon Changed Its Lens Design In 2010

While Sensocon asserts that the Lens Mark is not a valid trademark and the lens reflected in Exhibit A to the First Amended Complaint does not infringe upon the Lens Mark, Sensocon made a business decision to change its lens design to ensure there were no further problems with Dwyer. (Aff. of T. Kohl, ¶ 9). On January 1, 2010, Sensocon began selling gauges with the lens pictured on Exhibit 49 to the Deposition of Sensocon, which is not included in the First Amended Complaint. (Dep. of Sensocon, pp. 78-79).

### F. Dwyer's Advertisements Of Sixty-Six Trademarks

Dwyer's 2007, 2008 and 2009 product catalogs include a section entitled "Trademark Acknowledgments" that provides Dwyer owns: (1) forty-four registered trademarks; (2) eighteen common law trademarks; and (3) four trademarks that include graphics. (Dwyer's 2007 Catalog; Dwyer's 2008 Catalog; Dep. of. E. Budny, p. 168, Exh. 13). The Series 2000 model number and the Lens Mark DO NOT appear in the list of sixty-six trademarks in 2007, 2008 or 2009. (Dwyer's 2007 Catalog; Dwyer's 2008 Catalog; Dep. of. E. Budny, p. 168, Exh. 13).

G.  **No Actual Confusion**

Dwyer concedes it is not aware of any actual confusion between the gauges at issue. (Dep. of E. Budny, pp. 133, 188 and 189). Haakon, one of Sensocon's customers, ordered gauges from Sensocon using the descriptions "2000," "MAGNEHELIC GAUGE," "MAG" and "S2002." (Dep. of Guy Vertefeuille, pp. 25-34, Exhs. 4-9). The individual who placed the purchase orders testified, "I knew definitely that I am doing business with Sensocon, and Sensocon is not Dwyer." (Dep. of Guy Vertefeuille, pp. 30-31, Exhs. 4-7). When asked about whether someone else at his company was confused about ordering from Sensocon versus Dwyer, he testified "It is impossible to be confused about this. We use the word magnehelic as like a common name for that device." (Dep. of Guy Vertefeuille, p. 40-41).

III. **Standard of Review**

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 922 (7th Cir. 2001). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To overcome a motion for summary judgment, the nonmoving party cannot rest on the mere allegations or denials contained in its pleadings. Rather, the nonmoving party must present sufficient

evidence to show the existence of each element of its case on which it will bear the burden at trial. *Id.* at 322-323; *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000). Where a factual record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (*citing Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

IV. **The Court Should Enter Summary Judgment In Favor Of Tony On All Counts Of The First Amended Complaint Because Tony Is Not Personally Liable For Sensocon's Actions**

One of the fundamental principles of American corporate law is that corporate shareholders are not held personally liable for acts attributable to the corporation. *Escobedo v. BHM Health Associates, Inc.*, 818 N.E.2d 930, 932-933 (Ind. 2004). "Because of the bedrock nature of the principle of limited shareholder liability, the burden on a party seeking to 'pierce the corporate veil' is severe." *Escobedo*, 818 N.E.2d at 933. Federal courts apply state law when considering an *alter ego*/veil piercing claim. *Freeland v. Enodis Corp.*, 540 F.3d 721, 739 (7th Cir. 2008). In Indiana,[2] it is well established that "corporate law permits the corporate form to be disregarded and personal

---

[2] In a federal question action where the federal court is exercising supplemental jurisdiction over state law claims, the federal court applies the choice of law rules of the forum state. *MRO Communications, Inc. v. American Telephone & Telegraph Company*, 197 F.3d 1276, 1282 (9th Cir. 1999); *Bankoklahoma Mortgage Corp. v. Capital Title Company, Inc.*, 194 F.3d 1089, 1103 (10th Cir. 1999). Pursuant to Indiana law, if the purposes and policies of the two potential rules are the same, the forum should apply the forum law. *Fridono v. Chuman*, 747 N.E.2d 610, 616 (Ind. Ct. App. 2001). In the present case, both Florida law and Indiana law regarding piercing the corporate veil have the same purposes and policies. Accordingly, Indiana law applies to Plaintiff's claims which attempt to hold Tony personally liable for Sensocon's actions. *See also Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states.").

liability imposed only where (1) the corporate form is so ignored, controlled, or manipulated that it is merely the instrumentality of another, and (2) the misuse of the corporate form constitutes a fraud or promotes injustice." *Escobedo*, 818 N.E.2d at 934-935; *citing Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). "Caselaw sets forth certain guideposts for helping make this determination: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice, or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form." *Escobedo*, 818 N.E.2d at 933; *citing Aronson*, 644 N.E.2d at 867.

  Dwyer cannot establish that Tony misused the corporate form. To the contrary, Sensocon maintains its own bank account, is capitalized, has corporate records and observes corporate formalities. Sensocon has not paid for Tony's personal obligations. Tony has not engaged in any conduct to manipulate the corporate form or to promote fraud, injustice or illegal activities. As such, the Court should grant summary judgment in favor of Tony, and against Plaintiff, on all counts in the First Amended Complaint directed to Tony. *Escobedo*, 818 N.E.2d at 935 (granting summary judgment in favor of defendant because there was no genuine issue of material fact regarding whether the defendant was merely the instrumentality of another).

V. **The Court Should Enter Summary Judgment In Favor Of Sensocon And Tony On Count I-Federal Trademark Infringement**

    A. **The Court Should Determine That Dwyer Cannot Recover Damages For Any Alleged Infringement Of The Lens Mark That Occurred Prior To January 14, 2009**

The Lanhan Act provides, in the pertinent part, as follows:

> Notwithstanding the provisions of section 1072 of this title, a registrant of a mark registered in the Patent and Trademark Office, may give notice that his mark is registered by displaying with the mark the words "Registered in U.S. Patent and Trademark Office" or "Reg. U.S. Pat. & Tm. Off." or the letter R enclosed within a circle, thus ®; and **in any suit for infringement under this chapter by such a registrant failing to give such notice of registration, no profits and no damages shall be recovered under the provisions of this chapter unless the defendant had actual notice of the registration.** (15 U.S.C. § 1111) (Emphasis added).

Sensocon and Tony first received actual notice of registration of the Lens Mark when they were served with a copy of the Complaint on January 14, 2009. As such, Dwyer is precluded from recovering any damages for any alleged infringement of the Lens Mark that occurred before January 14, 2009. *Coach, Inc. v. Asia Pacific Trading Co., Inc.*, 676 F. Supp. 2d 914, 922-924 (C.D. Cal. 2009) (granting summary judgment in favor of defendant on trademark infringement and false designation of origin claims because plaintiff could not recover damages that accrued before plaintiff gave actual notice of registration *via* service of the complaint).

    B. **The Court Should Determine That Dwyer Cannot Recover Any Actual Damages Because Dwyer Has Agreed That It Only Seeks Sensocon's Profits**

In its First Amended Complaint, Dwyer requested that Sensocon and Tony pay for damages Dwyer purportedly sustained (i.e. actual damages). Subsequently, Dwyer elected to pursue Sensocon's profits, but not pursue Dwyer's lost profits. (Dep. of. E. Budny, pp. 49-50; Dwyer's Responses to Interrogatories, No. 7).

### C. The Court Should Determine That Dwyer Cannot Recover Damages For Any Alleged Infringement Of The Lens Mark That Occurred After December 31, 2009

As of January 1, 2010, Sensocon has not sold the gauge with the lens designs pictured in Exhibits A or C of the First Amended Complaint. Rather, since at least as early as January, 2010, Sensocon has only sold gauges with the lens pictured in Exhibit 49 of the Deposition of Sensocon. Dwyer has not pled that the new lens design infringes on the Lens Mark. Moreover, the Lens Mark registration states that it "consists of a plurality of horizontal lines and a raised rectangular portion of the lens of the pressure gauge." (First Amended Complaint, Exh. D). The new lens design does not consist of a plurality of horizontal lines, and it does not have a raised rectangular portion. As such, Dwyer may not recover damages from Sensocon or Tony for any sales after December 31, 2009.

### VI. The Court Should Enter Summary Judgment In Favor of Sensocon And Tony On Count II-Federal Trademark Infringement Because Sensocon's Use Of The MAGNEHELIC Mark In The Flyer Was A Valid Comparative Advertisement

The use of another's trademark in the advertising or marketing of products is permitted provided there is truthful disclosure and no likelihood of confusion. *See* 2 Gilson, Trademark Protection and Practice § 5.09[3]; McCarthy, Trademarks and Unfair Competition §§ 25:34-25:52. As stated in *New Kids on The Block*, where a competitor uses a trademark to describe the plaintiff's product, rather than its own, the competitor is entitled to a nominative fair use defense provided: (1) the product in question must be one not readily identifiable without use of the trademark; (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *New Kids on the Block v. News America Pub., Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

In this case, the only infringement of the MAGNEHELIC Mark alleged by Dwyer occurred in the Flyer. (First Amended Complaint, ¶53). The MAGNEHELIC Mark was used in the Flyer to simply describe Dwyer's model Series 2000 gauges, which are not readily identifiable without the use the MAGNEHELIC Mark. The MAGNEHELIC Mark simply includes text, not a logo, so there is no issue regarding whether Sensocon used graphics or otherwise used more of the mark than was reasonably necessary. Also, nothing in the Flyer suggests joint sponsorship or endorsement by Dwyer. To the contrary, the clear message of the Flyer is that consumers should buy from Sensocon, not Dwyer. As such, the Court should enter summary judgment in favor of Sensocon and Tony on Count II.[3] *New Kids on the Block*, 971 F.2d at 309 (granting summary judgment in favor of competitor on a trademark infringement claim because there was no implied joint sponsorship or endorsement).

### VII. The Court Should Enter Summary Judgment In Favor of Sensocon And Tony On Count III-Federal Trademark Infringement Because Dwyer Has Agreed Not To Pursue This Claim

On March 3, 2011, Sensocon's counsel received an e-mail from Dwyer's counsel that stated, in pertinent part, "Dwyer will no longer be pursuing Count III (trademark infringement 15 U.S.C. §1114 of U.S. Trademark Reg. No. 946,287 for DWYER) and or any other claim in connection with Dwyer Instruments, Inc. 'DWYER' trademark registration in this action for the past actions of

---

[3] Even if the Court determines Sensocon infringed on the MAGNEHELIC Mark, it cannot show that the use of the Magnehelic Mark in the Flyer caused damages. Dwyer does not know who received the Flyer. (Dep. of E. Budny, pp. 126-127). Without identifying who received the Flyer, Dwyer's allegation that the Flyer caused damages lacks proof of damages to a reasonable certainty. Absent such proof, the allegations are speculative and as a result summary judgment should be entered in favor of Sensocon on Count II. *Indiana Bureau of Motor Vehicles v. Ash, Inc.*, 895 N.E.2d 359, 368 (Ind. Ct. App. 2008)(holding that without evidence of damages, "the trial court would have been forced to speculate as to the amount of damages" and noting that "an award of damages cannot be based on speculation.")

Defendants." As such, the Court should enter summary judgment in favor of Sensocon and Tony on Count III.

VIII. **The Court Should Enter Summary Judgment In Favor Of Sensocon And Tony On Count IV-Federal Unfair Competition/False Designation of Origin (15 U.S.C. § 1125)**

    A.    **Sensocon's Use Of The MAGNEHELIC Mark In The Sales Flyer Is Not Likley To Cause Confusion**

The Lanham Act provides that any person who uses any false designation of origin which is likely to cause confusion as to the origin of his or her goods shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a)(1). "In assessing the likelihood of confusion, courts have identified seven relevant factors that help in deciding the ultimate question: (1) similarity of the marks; (2) the similarity of the products; (3) the area and manner of the concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of plaintiff." *Sullivan v. CBS Corporation*, 385 F.3d 772, 776-777 (7th Cir. 2004). Although actual confusion is not necessary to establish likelihood of confusion, the fact that there is no actual confusion after the lapse of substantial time is strongly probative there is no likelihood of confusion. *Scotch Whisky Assoc. v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 598 (4th Cir. 1992).

In this case, Sensocon does not have any marks similar to the MAGNEHELIC Mark. In addition, Sensocon used the MAGNEHELIC Mark to identify Dwyer's gauges in comparison to Sensocon's gauges so there would be no confusion as to which gauges were provided by each company. The message of the Flyer is that the reader should purchase from Sensocon, not Dwyer. Moreover, there is no evidence that a consumer was actually confused. Further, Sensocon did not

intend to palm off its goods as those of Dwyer, which is why it used the MAGNEHELIC Mark to identify Dwyer's gauges. (Aff. of. T. Kohl, ¶ 8). As such, the Court should enter summary judgment in favor of Sensocon and Tony on Count IV of the First Amended Complaint. *Id.* (granting summary judgement in favor of defendant on unfair competition claim where there was no evidence of actual confusion).

### B. Dwyer Has Agreed Not To Rely Upon the DWYER Mark As Support For Count IV

On March 3, 2011, Sensocon's counsel received an e-mail from Dwyer's counsel that stated "Plaintiff will no longer be relying on the "DWYER" trademark registration as support for Count IV." As such, the Court should enter summary judgment should be entered in favor of Sensocon and Tony on Count IV of the First Amended Complaint.

### C. Dwyer Is Limited To Seeking To Recover Sensocon's Profits From Between January 14, 2009 and December 31, 2009

For the same reasons stated in Section V, Paragraph A above, Dwyer is precluded from recovering any monetary damages for the Lens Mark that it incurred before January 14, 2009. *Coach, Inc. v. Asia Pacific Trading Co., Inc.*, 676 F. Supp. 2d 914, 924 (C.D. Cal. 2009) (granting summary judgment in favor of defendant on trademark infringement and false designation of origin claims because plaintiff could not recover damages that accrued before plaintiff gave actual notice of registration *via* service of the complaint). For the same reasons stated in Section V, Paragraph B above, Dwyer may only pursue Sensocon's profits, but not pursue Dwyer's lost profits. For the same reasons stated in Section V, Paragraph C, Dwyer may not recover damages for Sensocon's sales or profits in 2010 and 2011. As such, the Court should enter summary judgment should be entered in favor of Sensocon and Tony on Count IV of the First Amended Complaint.

IX. **The Court Should Enter Summary Judgment In Favor Of Sensocon And Tony On Count V-Common Law Trademark Infringement/False Designation of Origin Because "Series 2000" Has Not Acquired Secondary Meaning**

A company's model series numbers are protectable common law trademarks only if and when the model series numbers acquire a secondary source-identifying meaning. *Ideal Industries, Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1022 (7th Cir. 1979). A secondary meaning is when a consumer identifies a business by a particular symbol. *Platinum Home Mortgage Corporation v. Platinum Financial Group, Inc.*, 149 F.3d 722, 728 (7th Cir. 1998); *Wesley-Jessen Division of Schering Corp., v. Bausch & Lomb* Inc., 698 F.2d 862, 865 (7th Cir. 1983). "To establish secondary meaning, a court may consider several factors to describe whether secondary meaning has been acquired or established: (1) the amount and manner of advertising; (2) the sales volume; (3) the length and manner of use; (4) consumer testimony; and (5) consumer surveys. *Platinum Home Mortgage Corporation*, 149 F.3d at 728.

Dwyer's own advertising reflects that it DID NOT consider the model designation Series 2000 to be a common law trademark since it was not mentioned in the list of eighteen common law trademarks in Dwyer's 2007, 2008 and 2009 catalogs. In addition, there is no evidence, through testimony or surveys, that consumers identify Dwyer by the "Series 2000" model number. To the contrary, one consumer has described it ordered gauges described as "S2002" and "S2003" from Sensocon knowing that Dwyer and Sensocon were separate entities. (Dep. of G. Vertefeuille, pp. 25-34, Exhs. 5-7). As such, summary judgment should be entered in favor of Sensocon and Tony on Count V.[4] *Bodum v. La Cafetiere, Inc.*, 621 F.3d 624, 626-627 (7th Cir. 2010) (granting summary

---

[4] The Court could equally dispose of Count VI because there is no likelihood of confusion regarding "Series 2000." The Lanham Act protects common law, or unregistered trademarks, as well. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505

judgment in favor of defendant on common law trademark where there is no evidence of secondary meaning).

### X. The Court Should Enter Summary Judgment In Favor Of Sensocon And Tony On Count VI-Common Law Unfair Competition Because There Was No Likelihood Of Confusion

"The analysis under the Lanham Act for trademark infringement and unfair competition also applies to claims of unfair competition under Indiana common law." *CFM Majestic, Inc. v. NHC, Inc.*, 93 F.Supp.2d 942, 950 FN20 (N.D. Ind. 2000); *Keaton and Keaton v. Keaton*, 842 N.E.2d 816, 820 (Ind. 2006). Under the Lanham Act, Dwyer must show a likelihood of confusion as to the affiliation, connection, or association of Dwyer and Sensocon. 15 U.S.C. § 1125(a)(1). As such, the Court should enter summary judgment in favor of Sensocon and Tony on Count VI for the same

---

U.S. 763, 768-769 (1992). As such, liability requires proof of the likelihood of confusion. *Id.* "In assessing the likelihood of confusion, courts have identified seven relevant factors that help in deciding the ultimate question: (1) similarity of the marks; (2) the similarity of the products; (3) the area and manner of the concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of plaintiff." *Sullivan v. CBS Corporation*, 385 F.3d 772, 776 (7th Cir. 2004). In this case, while the series numbers and gauges at issue are similar, there is no likelihood of confusion because in Sensocon's documents Series S2000 and Series P2000 appear next to or below "SENSOCON" and "SENSOCON" appears in a larger font. (See First Amended Complaint, Exhs. A, B and F). While Dywer contends "Series 2000" is a strong mark, "Series 2000" is noticeably absent from its gauges and bulletin. (See First Amended Complaint, Exh. I). Moreover, Dwyer took the time and effort to list the eighteen common law trademarks it claims in its catalogs, but Series 2000 does not appear on the list. Further, there is no evidence of actual confusion. To the contrary, one consumer has described it ordered gauges described as "S2002" and "S2003" from Sensocon knowing that Dwyer and Sensocon were separate entities. (Dep. of G. Vertefeuille, pp. 25-34, Exhs. 5-7). Further, Sensocon did not intend to palm of its gauges as those of Dwyer. (Aff. of T. Kohl, ¶ 8). As such, summary judgment should be entered in favor of Sensocon and Tony on Count IV of the First Amended Complaint.*Sullivan v. CBS Corporation*, 385 F.3d 772, 777 (7th Cir. 2004) (granting summary judgment in favor of defendant on a trademark infringement claim because there was no genuine issue of material fact as to the likelihood of confusion).

reasons it should enter summary judgment in favor of Sensocon and Tony on Count IV, including there is no evidence of likelihood of confusion in the record.

### XI. The Court Should Enter Summary Judgment In Favor Of Sensocon And Tony On Count VIII-Copyright Infringement

#### A. Sensocon's Profits Are Not Attributable To The Alleged Copyright Infringement

(a) In General.--Except as otherwise provided by this title, an infringer of copyright is liable for either--

> (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
>
> (2) statutory damages, as provided by subsection (c).

(b) Actual Damages and Profits.--The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any **profits of the infringer that are attributable to the infringement** and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work. 17 U.S.C. § 504(a-b). (Emphasis added).

A copyright holder must offer enough non-speculative evidence to support a causal relationship between the infringement and resulting profits. *Mackie v. Rieser*, 296 F.3d 909, 911-916 (9th Cir. 2002); *see also Eagle Services Corp. v. H2O Industrial Services, Inc.*, 532 F.3d 620, 623 (7th Cir. 2008).

In this case, Dwyer elected to pursue Sensocon's profits, but not pursue Dwyer's actual damages. (Dep. of. E. Budny, pp. 49-50). Dwyer may only recover Sensocon's profits that are attributable to the infringement. Dwyer has pled that Sensocon's installation instructions for its gauges (First Amended Complaint, Exhs. B and C) infringe on Dwyer's copyrighted work (First Amended Complaint, ¶¶ 96, 101 and 102, Exh. H). The certificate of registration for the copyright

at issue reflects Dwyer has a copyright claim over: (1) certain text; (2) editing; (3) photograph (4) illustrations; and (5) translation. (First Amended Complaint, Exh. H). Sensocon's installation instructions clearly do not reflect the same text, editing, photographs or translation. The only item that remains is illustrations. While the illustrations in Exhibit C are clearly very different from those in Exhibit I, the illustrations on page two of Exhibit I appear substantially similar to illustrations on page two of Exhibit B. (First Amended Complaint, Exh. I). However, even if Dwyer could show that the illustrations on page two of Exhibit B infringe, it still has to show a causal relationship between the alleged infringement and resulting profits. In order for infringement to cause any of Sensocon's profits, a consumer would have had to view the illustrations on page two of Exhibit B and subsequently purchase Sensocon's gauges as a result of viewing the illustrations. Since the installation instruction was packaged with its gauges, consumers purchased gauges before they reviewed Exhibit B. There is no evidence that Sensocon profited from the alleged infringement. As such, summary judgment should be entered in favor of Sensocon and Tony on Count VIII. *Mackie*, 296 F.3d at 911-916 (9th Cir. 2002)(granting summary judgment in favor of defendant when copyright infringement plaintiff seeking to recover profits under 17 U.S.C. § 504(b) did not create a triable issue regarding with the infringement caused defendant's profits).

### B. Dwyer Cannot Recover Statutory Damages Because It Registered Its Copyright After The Alleged Infringement

The U.S. Code provides, in the pertinent part, as follows:

> In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section

411(c), **no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--**

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
>
> (2) **any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.** 17 U.S.C. § 412.

In this case, Dwyer's effective date of registration is December 18, 2008. However, Sensocon imported copies of Exhibits B and C before December 18, 2008. (Aff. of T. Kohl, ¶ 11). As such, Dwyer may not recover statutory damages or attorney's fees on its copyright infringement claim. *Singh v. Famous Overseas, Inc.*, 680 F.Supp. 533, 536 (E.D. NY 1988) (plaintiff barred from recovering statutory damages or attorney's fees where repeated acts of copyright infringement commenced prior to registration of the copyright).

**XII.   The Court Should Enter Partial Summary Judgment In Favor Of Sensocon and Tony On Count IX-Counterfeiting (15 U.S.C. § 1114) Because Dwyer Is Limited To Seeking Sensocon's Profits From Between January 14, 2009 and December 31, 2009[5]**

Under the Lanham Act, any person who, without the consent of the registrant, uses in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale of any goods which such use is likely to cause confusion shall be liable in a civil action by the registrant. 15 U.S.C. § 1114 (1). Moreover, the term "counterfeit mark" means a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods sold. 15 U.S.C. § 1116 (d).

---

[5] Sensocon and Tony Kohl's arguments regrading limiting the damages Dwyer may seek are not an admission of liability and shall not be construed as an admission of liability.

In this case, Dwyer pled that Sensocon "sold, offered for sale, imported and distributed" counterfeits of the Lens Mark. (First Amended Complaint, ¶ 107). Count IX is based upon infringement of the Lens Mark. For the same reasons set forth in Section V, Dwyer is limited to seeking to recover Sensocon's profits from between January 14, 2009 and December 31, 2009.

## XIII. Conclusion

Based upon the foregoing, Defendants' Motion for Partial Summary Judgment should be granted.

Respectfully submitted,

s/ Joshua A. Visser
Brent E. Inabnit, #17387-71
Joshua A. Visser, #25144-64
SOPKO, NUSSBAUM, INABNIT & KACZMAREK
5th Floor - Plaza Building
210 South Michigan Street
Post Office Box 300
South Bend, Indiana 46624
Telephone: (574) 234-3000
Facsimile: (574) 234-4220
Attorneys for Defendants

Clifford Browning
KRIEG DEVAULT LLP
One Indiana Square
Suite 2800
Indianapolis, Indiana 46204
Telephone: (317) 238-6203
Facsimile: (317) 636-1507
Attorney for Defendants

## CERTIFICATE OF SERVICE

I certify that on March 11, 2010, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which sent notification of such filing to the following:

David R. Pruitt
david.pruitt@BTLaw.com

Jonathan R. Froemel
jfroemel@btlaw.com

Mark Hagedorn
mhagedorn@btlaw.com

P:\WP51\DOC\ATT\JAV\SENSOCONmsjmemo.wpd

s/ Joshua A. Visser