UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DWYER INSTRUMENTS, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | CASE NO. 3:09-cv-00010-TLS-CAN |
| | ) | |
| SENSOCON, INC. and | ) | Hon. Judge Theresa Springmann |
| TONY E. KOHL, | ) | |
| Defendants. | ) | Magistrate Judge Nuechterlein |

_____

**DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE
SURVEY AND OPINIONS OF JAMES T. BERGER**
_____

Defendant, Sensocon, Inc. ("Sensocon"), will and hereby does move before the Honorable Judge Theresa L Springmann of the United States District Court for the Northern District of Indiana, for an order to exclude the surveys, reports, and opinions of James T. Berger, and for any other further relief as this Court may deem just, proper, and equitable.[1]

**I.   INTRODUCTION**

On March 11, 2011, Plaintiff, Dwyer Instruments, Inc. ("Dwyer"), and Sensocon, filed cross motions for summary judgment. On April 11, 2011, in support of its response to Sensocon's motion, Dwyer, submitted as an expert report, the Amended Report of James T. Berger ("Berger Report"). (ECF 120-1.) In response, Sensocon, filed a Motion to Strike [ECF 117] the Berger Report pursuant to the Federal Rule of Civil Procedure 56(c) and Federal Rule of Evidence 702 arguing, among other things, that the Berger Report failed to meet the standard for expert testimony required pursuant to *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993). The Court denied Sensocon's Motion to Strike the Berger Report.  (ECF 123.)

---

[1] Although the undersigned represents Defendant Sensocon, as well as Tony Kohl individually, this motion is brought on behalf of only Sensocon by virtue of the automatic stay provision set forth by Section 362(a) of the United States Bankruptcy Code.

1

Sensocon is renewing and amending its claims made in its prior Motion to Strike in this motion in limine to exclude the survey, report, and opinion of James T. Berger from evidence to be presented to the jury as they are unreliable, untrustworthy, unhelpful, irrelevant, misleading, prejudicial, and not probative. The Berger Report, associated survey and opinions are so fundamentally flawed that they are unreliable and can only serve to mislead and confuse the jury; they should be excluded under both Federal Rule of Evidence 702 and under the criteria set forth in *Daubert*.

## II.  STATEMENT OF FACTS

1. On July 14, 2010, Dwyer served its Designations Pursuant to Rule 26(a)(2) of the Federal rules of Civil Procedure. Dwyer's designation listed James T. Berger as a Marketing Consultant and attached the "Expert Report and Disclosure of James T. Berger" as Exhibit B. The Berger Report is based upon a survey "("Berger Survey") which is described in the Berger Report.

2. On July 23, 2010, Dwyer filed its Amended Designations Pursuant to Rule 26(a)(2) of the Federal rules of Civil Procedure [ECF 121], which contained the "Amended Report of James T. Berger" [ECF 121-1].

3. On March 11, 2011, Sensocon filed its Motion for Partial Summary Judgment [ECF 103] and Memorandum in Support of Sensocon, Inc. and Tony E. Kohl's Motion for Partial Summary Judgment [ECF 105].

4. On March 11, 2011, Dwyer filed its Motion for Partial Summary Judgment [ECF 97] and Plaintiff's Memorandum in Support of its Motion for Partial Summary Judgment [ECF 98]

5. On April 22, 2011, Dwyer filed a Memorandum in Opposition to Defendants' Motion for Partial Summary Judgment [ECF 108].

6. On May 6, 2011, Sensocon filed a Motion to Strike [ECF 117] which requested that the Court strike the Berger Report.

7. On May 20, 2011, Dwyer filed a Memorandum in Opposition of Defendants' Motion to Strike [ECF 120].

8. On February 21, 2012, the Court entered an Order and Opinion [ECF 123] which denied the Defendants' Motion to Strike [ECF 117] and granted the Defendants until March 15, 2012 to submit the Rebuttal Report of Michael B. Mazis, Ph.D. ("Mazis Report") [ECF 124-1].

9. On March 15, 2012, Sensocon filed the Rebuttal Report of Michael B. Mazis, Ph.D.

10. On March 23, 2012, the Court entered an Opinion and Order [ECF 135] on Plaintiff's Motion for Partial Summary Judgment.

11. On June 5, 2012, the Court entered an Opinion and Order [ECF 126] on Sensocon's Motion for Partial Summary Judgment.

12. On August 8, 2012, Dwyer filed its Second Amended Complaint [ECF 132].

13. On September 10, 2012, Sensocon filed its Answer to Dwyer's Second Amended Complaint [ECF 137].

14. This cause is currently scheduled for trial before jury beginning June 16, 2014.

### III.   ARGUMENT

**A.   The Scheduled Jury Trial and Rebuttal Expert Report of Michael B. Mazis, Ph.D. Necessitates the Court Consider this Motion in Limine Under Different Considerations Than Those That Existed at the Time of the Motion to Strike**

On February 21, 2012, this Court entered its Opinion and Order [ECF 123] denying Sensocon's Motion to Strike [ECF 117] the Berger Report and granting Sensocon's request to submit the Rebuttal Report of Michael B. Mazis, Ph.D. (Order 12, ECF No.123.) The Court made a finding that, "The Defendants do not claim that the identified universe was erroneous or inadequate to represent the opinions that are relevant to this litigation…." (Id. 6.) In denying the motion to strike the Court relied partially on a line of cases out of the Seventh Circuit that provide that shortcomings in the survey result go to the weight of the survey and should be evaluated by the trier of fact. (Id. 3.) In its recitation the Court cites to *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, quoting "[w]hile there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible … such situations will be rare." *AHP Subsidiary Holding Co.*, 1 F.3d 611, 618 (7th Cir. 1993). (Order 3, ECF No. 123.) Sensocon contends that the Berger Survey conducted in this matter is one of those "rare" situations contemplated by the Seventh Circuit in *AHP Subsidiary*.

Viewing the Berger Survey in light of the deficiencies identified by the Mazis Report establishes that the Berger Survey is fatally flawed and therefore inadmissible. Although the Court previously made a finding that the Defendants did not challenge the validity of the identified universe, the Mazis Report specifically identifies a flawed universe as one of its challenges to the Berger Survey. (Mazi Report 6, ECF No. 124-1, 10.) The facts and opinions set forth in the Mazis Report will provide additional information and perspective for the Court to further consider the admissibility of the Berger Report.

The Defendant is now seeking to exclude the Berger Survey, Report, and any testimony of Berger as inadmissible in the upcoming jury trial. Although the Court previously denied the Motion to Strike, the validity of a survey should be gauged before being presented to a jury

should be heightened.  *See The Learning Network, Inc. v. Discovery Commc'ns*, 153 F. Supp. 2d 785 at 789 (D. Md. 2001); see also THOIP v. Walt Disney Co., 690 F. Supp. 2d 218, 231 (S.D.N.Y 2010)(holding that when a jury trial rather than a bench trial is contemplated the court should scrutinize the survey evidence with particular care).  Juries must be shielded from inadmissible evidence whereas judges, by virtue of their special training, can rationally and unemotionally reach a decision completely ignoring the improper evidence.  *Toys "R" Us, Inc. v. Carnais Kiddie Shop, Inc.*, 559 F. Supp. 1189, 1202 (E.D.N.Y. 1983) (excluding evidence because it did not reflect sufficient indicia of trustworthiness and noting that the decision to receive improper evidence is of lesser importance in a bench trial); *see also Hutchinson v. Essence Commc'ns,* 769 F. Supp. 541, 557 (S.D.N.Y. 1991) (noting that the trial "was not before a jury" and acknowledging that this fact affected the judge's decision to admit the questionable survey).

In keeping with the mandate of the Federal Rules of Evidence and established trademark principles, the jury in this case should not be exposed to Mr. Berger's severely flawed and unreliable survey. *See* Kenneth A. Plevan, *Daubert's Impact on Survey Experts in Lanham Act Litigation,* 95 Trademark Rep. 596 at 605 (2005) (noting that "if a judge believes that a survey's probative value is weak, it can be excluded because of the concern that the appearance of an expert sponsoring a discredited survey will unfairly prejudice or confuse the jury").[2]

### B.     The Berger Report Fails To Meet The Standard Required By Federal Rule of Evidence 702 And Daubert.

The Berger Report fails to meet the standard established under Federal Rule of Evidence 702 for expert opinion. The admissibility of scientific or technical evidence is governed by

---

[2] This section as well as others herein contain excerpts from Memorandum in Support of Plaintiff's Renewed Motion in Limine to Exclude the Survey and Opinions of James T. Berger, *University of Kansas v. Sinks*, 565 F. Supp. 2d 1216 (D.Kan.2008), (No. 06-2341)  2008 WL 2725910 "*University of Kansas v. Sinks*".

Federal Rule of Evidence 702 and the standards outlined by the U.S. Supreme Court in Daubert.

Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The gate-keeping function required of the court ensures that expert testimony is reliable and relevant. *United States Gypsum Co. v. LaFarge North America, Inc.*, 670 F. Supp. 2d 748, 751 (N.D.Ill.2009) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).  In *Daubert*, the Supreme Court outlined several factors that judges should consider in evaluating scientific evidence, including: (1) whether a theory or technique can be, and has been, tested; (2) whether a theory or technique has been subjected to peer review or publication; (3) the known or potential rate of error; (4) whether there are standards controlling the technique's operation; and (5) whether the theory or technique is generally accepted in the scientific community. 509 U.S. at 592-594. It is the court's job to determine whether the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Schnur v. Kohl's Dep't Stores, Inc.,* 06 C 3040, 2010 WL 4930687, at *3 (quoting *Kumho Tire*, 526 U.S. at 152).  The party who seeks to introduce expert testimony bears the burden of proving that the admissibility requirements are met.  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir, 2009).

Courts in the Seventh Circuit have used numerous particular criteria when evaluating the reliability of market research evidence. *See Menasha Corporation v. News America Marketing In

*Store, Inc.*, 238 F.Supp.2d 1024, 1030-1031 (N.D. Ill, 2003); *Competitive Edge, Inc. v. Staples*, Inc., – F.Supp.2d –, 2010 WL 1292464 at * 5 (N.D. Ill., March 29, 2010).  First, "the probative value of a survey depends in large part on the universe of respondents and the reliability of the survey is diminished if the universe of desired respondents is erroneous or undefined." *Competitive Edge*, 2010 WL 1292464 at * 6 (citing *Spraying Sys. Co. v. Delavan, Inc.*, 975 F.2d 387, 394 n. 5 (7 Cir.1992)(noting that a survey designed to demonstrate secondary meaning had failed to target all relevant purchaser.)  Second, a survey must avoid the use of confusing or ambiguous questions. *Nat'l Football League Props., Inc. v. ProStyle, Inc.*, 57 F.Sup.2d 665, 668 (E.D. Wis. 1999). The Berger Report falls far short of each of these criteria.  In addition, the Berger Survey suffers from a number of other flaws in design and application.  The litany of flaws and errors associated with the Berger Survey render it so untrustworthy that its introduction to the jury would be both unhelpful and misleading.

**1. The Survey and Corresponding Report and Opinion Should be Excluded For Failing to Test the Proper Universe.**

According to the Reference Guide on Survey Research,[3] "defining the universe or target population is important because there may be systematic differences in the responses of embers of the population and nonmembers.  Selection of the proper universe is a crucial step, for even if the proper questions are asked in a proper manner, if the wrong persons are asked, the results are likely to be irrelevant."  J. Thomas McCarthy, Mccarthy On Trademarks And Unfair Competition § 32:159 (4TH ED. 2007)("McCarthy").  Selection of an improper universe undercuts the reliability of the entire survey.  *See Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d at 487 (stating that the universe selected by the expert "severely limit[ed] the probative value of the survey's results").

---

[3] Shari Seidman Diamond, "Reference Guide on Survey Research" in *Reference Manual on Scientific Evidence, Second Edition*, Federal Judicial Center, 2000 (hereafter referred to as "Reference Guide").

The target population for the Berger Survey was determined primarily by two screening questions:

- Have you purchased a differential pressure gauge product within the last three years?

- Do you anticipate purchasing a differential pressure gauge product in the next 12 months?

Individuals qualified for the survey if they answered affirmatively to either question. (Am. Berger Report 8, ECF No. 120-1 at 11.) These questions failed to establish whether the respondents were differential pressure gauge decision makers who work for original equipment manufacturers, distributors, or end users or other customers likely to purchase differential pressure gauges. In fact during the validation process it was shown that the survey population failed to meet even the inadequate criteria established by the survey. Suburban Market Research, Inc., the validation company, was able to contact 51 of the 409 respondents. 11 of the 51 respondents (22%) admitted to the interviewer that they had not purchased a differential pressure gauge and did not expect to. (Am. Berger Report, Exhibit D.) While these 11 respondents were not included in the tabulations, there is no information about the purchasing pattern of the remaining 358 respondents with whom no contact was made. (Mazis Report 7) The survey's target population should have focused on business purchasers whose employment could be verified, who work for companies that purchase differential pressure gauges. These individuals would be more likely to be informed about various brands of differential pressure gauges and would be a true representation of the real world customer market. (Id. 7.)

The Berger Survey failed to identify an appropriate universe and, as has been done before, this Court should exclude the Berger Survey, and related reports and opinions as it could be misleading to the jury. *See e.g.*, *Powerhouse Marks LLC v. Chi Shin Impex, Inc.,* No. 04-73923, 2006 WL 897254 at *3 (E.D. Mich. Apr. 5, 2006) (excluding the Berger survey and

noting that the precise universe for a survey "is not limited to actual buyers but rather potential buyers); *see also Vista Food Exch., Inc. v. Vistar Corp,* No. 03-CV-5203DRHWDW, 2005 WL 2371958, at *5 (E.D.N.Y. Sept. 25, 2005)(finding that the survey conducted by James T. Berger failed to properly define the universe and was flawed to the point that its probative value was substantially outweighed by the potential for unfair prejudice or confusion); *see also Jordache Enters. v. Levi Strauss & Co.,* 841 F. Supp. 506, 518 (S.D.N.Y. 1993) (excluding survey of participants who had purchased or had worn jeans within the past six months but it did not inquire as to whether those participants intended to purchase jeans in the future); *Hodgdon Powder Co., Inc. v. Alliant Techsystems, Inc.,* 512 F. Supp. 2d at 1181 (excluding survey with flawed universe).

### 2. The Survey and Corresponding Report and Opinion Should be Excluded For Failing to Simulate Marketplace Conditions

Research designs should come as close as possible to replicating how consumers are likely to encounter trademarks or trade dress under ordinary conditions.

> …..a survey is designed to prove the state of mind of a prospective purchaser.  Therefore, the closer the survey methods mirror the situation in which the ordinary person would encounter the trademark, the greater the evidentiary weight of the survey results.[4]

Therefore, when consumers view an array of products in a survey, they should be inspecting the products as they typically would in the "real world," such as on the shelf of a retail store.  (Mazi Report 8.)  McCarthy comments on a flawed survey methodology that mirror the methodology in the Berger Survey:

> Showing respondents the conflicting branded products side-by-side and asking if they were made by the same company where that is not how the products appeared in the marketplace.[5]

---

[4] McCarthy at §32:163.
[5] Id. at §32:171.

The need to mirror the marketplace in Internet surveys has also been discussed by McCarthy:

> As with any survey, an internet based survey to be found admissible and reliable must try to replicate the actual conditions under which Internet users are likely to encounter the trademarks.[6]

A survey that fails to replicate actual marketplace conditions should be excluded. *See Vista Food* at *5 (excluding Berger's survey because it "failed to replicate actual marketing conditions and improperly skewed results in favor of responses indicating confusion.").

The "array" procedure used in the Berger Survey is fatally flawed because purchasers ordinarily would not view and compare products from the five companies on display together in the marketplace at a single physical location or on the Internet.  Pressure gauges are not retail products.  Rather, purchasers are corporations that are visited by sales persons who hope to sell pressure gauges to prospective clients.  The appropriate research design in this forward confusion case is to contact decision makers within companies that are prospective pressure gauge purchasers. (Mazis Report 8-9.)

The results of the Berger Survey are immaterial because it failed to simulate decision makers' likely exposure to the defendant's product.

### 3. The Survey and Corresponding Report and Opinion Should be Excluded As a Result of Biased Questions

The five key questions asked of the respondents in the survey were biased. (Mazis Report 12.)  When survey questions are phrased in a way that could skew the results the results are untrustworthy and inadmissible. *See Hodgdon*, 512 F. Supp. 2d at 1182.  Each of the key questions started with the phrase "Which, if any, of these products do you believe…"  Such leading questions tend to steer respondents into believing that some of the products shown must be put out by the same company or connected in some manner. (Mazis Report 12.)  It is standard

---

[6] Id. at §32:171.

practice to first ask respondents, for example, whether or not any of the products in the array are put out by the same company.  Then, if respondents indicate that one or more of the products are put out by the same company, the follow up question would query respondents as to which products are put out by the same company.  Such a procedure is far less biasing than the approach used in the Berger Survey. (Id. 12.)  As a result of the untrustworthiness of the questions the results of the survey should be determined to be inadmissible.

### 4. The Berger Survey is Flawed Because it Failed to Utilize Controls

It is generally accepted by researchers in the field that it is necessary in likelihood of confusion of surveys to use some form of controls.  Controls permit researchers to eliminate or minimize "noise" – extraneous factors, such as question wording or guessing that may bias the results. (Mazis 9.)  One type of control is a separate control group. The Reference Guide on Survey Research states:

> It is possible to adjust many survey designs so that casual inferences about the effect of a trademark or an allegedly deceptive commercial become clear and unambiguous.  By adding an appropriate control group, the survey expert can test directly the influence of the stimulus.  In the simplest version of a survey experiment, respondents are assigned randomly to one of two conditions.  For example, respondents assigned to the experimental condition view an allegedly deceptive commercial, and respondents assigned to the control condition either view a commercial that does not contain the allegedly deceptive material or do not view any commercial.[7]

The Reference Guide goes on to state:

> ….outcome figures from a treatment group without a control group generally reveal very little and can be misleading.  Comparisons are essential.[8]

Courts have recognized the necessity of adequate controls in order for a consumer survey to be

---

[7] Id. at 240.
[8] Id. at 240.

reliable. *See Winning Ways, Inc. v. Holloway Sportswear, Inc.,* 913 F. Supp. at 1470 (D. Kan. 1996) (finding survey did not control for noise). Mr. Berger's failure to use control questions in his Survey renders the resulting data "meaningless and [of] no evidentiary value." *See Major League Baseball Props., Inc. v. Sed Non Olet Denarius, Ltd.,* 817 F. Supp. 1103, 1124 (S.D.N.Y. 1993) (finding surveys "flawed" because they did not contain a control question).

There was no control group utilized in the Berger survey. All respondents were asked about the same five products. As a result, there is no control over alternative explanation of the findings, such as guessing, order effects, or question wording. The Berger Survey also failed to implore any type of internal control. Internal controls can be used to adjust for noise in a likelihood of confusion survey. (Mazis Report 10.)

The failure of the Berger survey to utilize any controls is further evidence that the results are flawed and are of no evidentiary value.

### 5. The Berger Report is Flawed Because it Omits The Respondent's Answers

After each of the Berger Survey's five key survey questions, a "Why?" question was asked. The responses to these "Why?" questions are critical to understanding the respondents' motivations. McCarthy states:

> Often, an examination of respondent's verbatim responses to the "why" question are the most illuminating a probative part of the survey, for they provide a window into consumer thought processes in a way that mere statistical data cannot.[9]

Mr. Berger failed to include any analysis of the respondents' answers in his expert report. As a result, the Berger Survey is critically flawed because of this important omission. (Mazis Report 11.)

### 6. The Berger Report is Not Trustworthy Because it Failed to Follow Standard Validation Practice

---

[9] McCarthy at §32:175.

It is a common survey practice to recontact respondents to ask where the initial interviews took place and to determine whether the respondents were qualified to participate in the survey. In the Burger Survey, 409 interviews were conducted and 51 respondents indicated through follow-up telephone calls that they had completed the survey and met the screening criteria. In addition, 11 interviews did not validate and were replaced. Thus 62 of 409 interviews (15.2%) were validated. However, it is standard practice to validate at least 50% of the interviews. (Mazis Report 11.)

> ….independent validation of at least 50% of interview by a third party rather than by the field service that conducted interviews increases the trustworthiness of the survey results.[10]

The validation rate in the Berger Survey fell far short of the industry norm. (Mazis Report 11.) As such the survey should be determined to be unreliable and not probative of the issues at hand.

### 7. The Results of the Berger Survey are Inconsistent and Not Reliable

Many of the respondents who indicated the Magnehelic (Dwyer) and Sensocon were "put out by the same company" also identified these two products as being "produced by companies that are associated with one another" or "produced by companies that are affiliated with one another." These responses are inconsistent because if the two products are put out by the same company they cannot logically be produced by separate companies that are associated or affiliated with one another. Such inconsistency calls into question the legitimacy of responses to these questions.

### C.   The Berger Survey Should Be Excluded Under FRE 403 Because It is So Flawed That it Has No Probative Value

The Berger Survey is so severely flawed that it has no probative value and would only confuse and mislead the jury. To be clear, even if the Berger Survey satisfied the requirements

---

[10] McCarthy at 32:175.

13

set forth in *Daubert,* which is does not, this Court may still exclude the Berger Survey and related opinions under FRE 403. *See Daubert,* 509 U.S. at 587, 595.[11]

A survey must be excluded under FRE 403 where it is so flawed in methodology that its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See Troublé v. Wet Seal, Inc.,* 179 F. Supp. 2d at 307 (excluding survey that was "flawed in several respects"); *see also Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 297 (2d Cir. 1999) (finding that "any probative value of the survey was outweighed by its potential to confuse the issues in the case" and noting that it was proper for the district court to exclude a survey from evidence before the jury because the survey questions were irrelevant); *Mastercard Int'l Inc. v. First Nat'l Bank of Omaha, Inc.,* No. 02-CIV-3691(DLC), 2004 WL 326708, at *9 (S.D.N.Y. Feb. 32, 2004) (excluding survey under FRE 403 and noting that "defects in the [s]urvey undermine its reliability").[12] Here, the Berger Survey and Report are so flawed that their exclusion is necessary to avoid confusing and misleading the jury.

**IV.   CONCLUSION**

Courts have previously excluded the surveys of Mr. Berger for many of the same flaws that were committed in the subject survey. See *Powerhouse* (noting the survey's inappropriate universe, leading questions, and conclusions based upon theories that were not tested); *Vista Food* at *7 (recognizing the survey's leading questions, improper universe, and failure to replicate actual market conditions). The Berger Survey, report, and any opinion derived therefrom, fail to meet the standard for admissibility under Federal Rule of Civil Procedure 56, the standard for reliability under Federal Rule of Evidence 702 and *Daubert,* and is so flawed that it warrants exclusion under Federal Rule of Evidence 403. *See Malletier v. Dooney &*

---

[11] *University of Kansas v. Sinks*
[12] *Id.*

*Bourke, Inc.*, 525 F. Supp.2d 558 (S.D.N.Y. 2007). Accordingly, it should be stricken in its entirety.

          Respectfully submitted,

          /s/ Kevin M. Kohl_____
          Kevin M. Kohl PHV
          THE KOHL LAW FIRM
          Post Office Box 432
          Lake Wales, FL 33859
          Telephone: (863) 676-6800
          Facsimile:  (863) 676-6833
          Kevin@TheKohlLawFirm.com
          Attorneys for Defendants

## CERTIFICATE OF SERVICE

I certify that on March 3, 2014, a true and correct copy of the foregoing **DEFENDANT'S MOTION IN LIMINE TO EXCLUDE THE SURVEY AND OPINIONS OF JAMES T. BERGER** was filed by electronic mail using the CM/ECF systems which sent notification of such filing to the following

David R. Pruitt
Barnes & Thornburg LLP
600 lst Source Bank Center
100 North Michigan
South Bend, Indiana 46601
574-233-1171
david.pruitt@BTLaw.com

Jonathan P Froemel
Barnes & Thornburg LLP
One N Wacker Drive Suite 4400
Chicago, IL 60606-2833
312-357-1313
312-759-5646 (fax)
jfroemel@btlaw.com

Mark A. Hagaedorn
Barnes & Thornburg LLP
One N. Wacker Drive Suite 4400
Chicago, Illinois 60606
312 357-1313
mhagedorn@btlaw.com

          /s/ Kevin M. Kohl_____